UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

FRANK EGAN SMITH, # 202759,  )
 )
        Plaintiff, ) Case No. 1:12-cv-1044
 )
v. ) Honorable Robert Holmes Bell
 )
WILLIE SMITH, et al., ) **REPORT AND RECOMMENDATION**
 )
        Defendants. )
_____)

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff is an inmate at the Carson City Correctional Facility (DRF). The defendants are DRF's Warden Willie Smith, Scott Holmes, M.D., Haresh Pandya, M.D. and Stephen Moore, R.N. Plaintiff alleges Drs. Holmes and Pandya and Nurse Moore were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights by not providing him with adequate medical care. He alleges that Warden Smith violated his Eighth Amendment rights when he failed to answer plaintiff's letter asking how plaintiff could obtain a second opinion from an outside medical source. Plaintiff sues defendants in their individual and official capacities and seeks injunctive and declaratory relief and damages.

The matter is before the court on defendants' motions for summary judgment. (docket #s 53, 57). Plaintiff has filed his response.[1] (docket #s 68, 69). For the reasons set forth

---

[1] Plaintiff argues that he is asserting a claim of "gross negligence" against all defendants. (Plf. Brief at 3, docket # 69). There is no state-law claim at issue in this case. Plaintiff's complaint does not allege any violation of state law. (Compl. ¶ VII, docket # 1 at ID# 7). He did not comply with any of the statutory prerequisites to bringing a state-law malpractice claim. *See* MICH. COMP.

herein, I recommend that all plaintiff's claims for damages against defendants Smith, Pandya, and Moore in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity. I further recommend that defendants' motion for summary judgment be granted and that judgment be entered in defendants' favor on all plaintiff's claims against them in their individual capacities.

## **Applicable Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Gecewicz v. Henry Ford Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). The court must draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wasek v. Arrow Energy Services, Inc.*, 682 F.3d 463, 467 (6th Cir. 2012).

---

LAWS §§ 600.2912b and 600.2912d; *Burton v. Reed City Hosp.*, 691 N.W.2d 424, 427-28 (Mich. 2005). Further, assuming the complaint had alleged a claim under Michigan law, the court, in its discretion, would have declined to exercise supplemental jurisdiction over such a claim. *See Robert N. Clemens Trust v. Morgan Stanley DW , Inc.*, 485 F.3d 840, 853 (6th Cir. 2007); 28 U.S.C. § 1367(c)(3).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1). FED. R. CIV. P. 56(c)(1). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e)(2), (3); *see Coleman v. Bowerman*, 474 F. App'x 435, 436 (6th Cir. 2012). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Donald v. Sybra, Inc.*, 667 F.3d 757, 760-61 (6th Cir. 2012).

**Proposed Findings of Fact**

The affidavits[2] and other evidence establish the following facts are beyond genuine issue. Plaintiff is an inmate serving lengthy prison sentences in the custody of the Michigan Department of Corrections (MDOC). (Compl. ¶ 4). Willie Smith is the Warden of the Carson City

---

[2]Plaintiff's complaint is verified under penalty of perjury. It is considered as an affidavit in opposition to defendants' motion for summary judgment. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). However, "verified" arguments and legal conclusions are not evidence. Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Medison Am. Inc. v. Preferred Med. Sys., Inc.*, 357 F. App'x 656, 662 (6th Cir. 2009); *see also Stine v. State Farm Fire & Cas. Co.*, 428 F. App'x 549, 550 (6th Cir. 2011) (A "conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment.").

Correctional Facility (DRF). (Smith Aff. ¶ 1, docket # 58-5, ID# 697). Haresh Pandya, M.D., is employed by the MDOC as the "Regional Medical Officer (RMO) for the Southern Region Health Care Administration." (Pandya Aff. ¶ 1, docket #58-1, ID# 677). Stephen Moore, R.N., is employed by the MDOC as a nurse manager at DRF. (Moore Aff. ¶¶ 1-4, docket # 58-4, ID# 692-93). Scott Holmes, M.D., is a licensed physician who provided medical care to plaintiff during his incarceration at DRF. (Holmes Aff. ¶ 1, docket # 53-2, ID# 238).

On October 6, 2011, plaintiff began his confinement at DRF. (Holmes Aff. ¶ 10, docket # 53-2, ID# 240). Plaintiff received extensive treatment for his lung cancer before and after his arrival at DRF. (docket #s 55-56, ID#s 258-655; docket # 62, ID#s 709-46). In March 2010, surgeons performed a left lobectomy with mediastinal node resection. (Holmes Aff. ¶ 6, ID# 239). On April 27, 2011, Dr. Pandya approved a Vicodin prescription and stated that the request for non-formulary medications should be resubmitted if plaintiff required stronger medication during his cancer treatment. (docket # 62-1, ID# 715). As the RMO, Dr. Pandya monitors medical care, makes decisions regarding off-formulary medication requests, acts as a resource person/consulting physician for on-site physicians, and participates as a member of the Pain Management Committee (PMC). He does not provide the on-site medical care. The on-site care is conducted by medical professionals operating under the supervision of a Regional Medical Director (RMD). (Pandya Aff. ¶¶ 3-5, docket # 58-1, ID# 677).

Plaintiff underwent a course of chemotherapy and radiation, which ended in July 2010. In December 2010, plaintiff developed pneumonia and received additional treatment and diagnostic studies. (Holmes Aff. ¶ 6, ID# 239). These studies included a CT scan taken in March 2011, which showed a 1.5 cm. soft tissue mass. It was noted to be probable scarring, but may have

been a small neoplasm. Plaintiff was referred to an oncologist and restarted on chemotherapy. On the oncologist's recommendation, plaintiff underwent a bronchoscopy/lung biopsy. It was negative for malignant cells. Plaintiff's CT scan in June 2011 did not reveal any cancer. (Holmes Aff. ¶¶ 7-8, ID# 239). Another CT scan in September 2011 revealed "little to any interval changes." (Holmes Aff. ¶ 9, ID# 239).

On October 6, 2011, plaintiff arrived at DRF. On October 11, 2011, Dr. Holmes submitted a request for non-formulary medication, Vicodin, on plaintiff's behalf, which Dr. Pandya approved. (Holmes Aff. ¶ 10, ID# 240; docket # 62-1, ID# 718). During an examination conducted on October 14, 2011, Dr. Holmes related that he would be seeing plaintiff on a monthly basis to monitor his condition. Plaintiff was taking various medications, including Hydrea for cancer, Phenergan for his stomach, and Vicodin for pain. In response to plaintiff's complaints of arthritic pains, Dr. Holmes gave him a Motrin prescription. Dr. Holmes also ordered x-rays of plaintiff's lungs. (Holmes Aff. ¶¶ 10-12, ID# 240). In November 2011, Dr. Holmes made a non-formulary request for Ensure to help address plaintiff's weight loss problem. This request was approved. (Holmes Aff. ¶ 14, docket # 53-2, ID# 240).

On December 2, 2011, plaintiff reported a variety of symptoms. Upon examination, Dr. Holmes found that plaintiff was not in any acute distress. (Holmes Aff. ¶ 15, ID# 241; docket # 55-3, ID#s 362-64).

In December 2011 plaintiff complained that the MS-Contin that he was receiving did not provide adequate pain relief. (docket # 62-3, ID# 746; Compl. ¶ 12). X-rays taken on December 27, 2011, showed little or no interval changes in plaintiff's chest. It did show a small pleural effusion. (Holmes Aff. ¶ 19, ID# 242). On January 5, 2012, Dr. Pandya approved a Methadone

prescription. (docket # 62-1, ID# 720). On January 9, 2012, Dr. Pandya approved the following adjustment in plaintiff's medication: "Approved increase in Methadone gradually by about 2.5-5 mg Daily preferably divided in 3 dosages 7-9 hr apart. Norco 5/325 TID PRN is approved for break[through] pain in between." (docket # 62-1, ID# 721). When plaintiff reported that he did not like Methadone, his pain medication was changed to Norco. (Holmes Aff. ¶ 20, ID# 242). On January 10, 2012, Dr. Pandya made another adjustment approving up to 8 tablets of "7.5/365 Norco per day." He indicated that discontinuing Methadone should be considered. (docket # 62-1, ID# 723). Plaintiff reported that Norco was not providing adequate pain relief. On February 22, 2012, Dr. Pandya approved an OxyContin prescription "for 30 days only." (docket # 62-1, ID# 727; Compl. ¶ 22; Holmes Aff. ¶ 22, ID# 242).

In March 2012, Dr. Pandya approved a Norco prescription for 30 days, but indicated that this should be tapered off if plaintiff's CT scan was negative for cancer. (docket # 62-1, ID# 728). On March 6, 2012, plaintiff began refusing to take Hydrea despite warnings that failure to take the medication could lead the cancer to recur. Plaintiff was unhappy with the prospect of being tapered off his then-existing pain regimen. (Holmes Aff. ¶ 25, ID# 243).

On March 14, 2012, plaintiff was transported from prison to Carson City Hospital for a CT scan. (Compl. ¶ 24). A radiologist interpreted the results as follows:

1. Status post pneumonectomy on the left with volume loss on the left check.
2. Stable appearance of an air space process in the left apex.
3. Stable appearance of extensive pleural thickening on the left.
4. Progression/worse consolidate involving the remaining left lower lobe with air bronchograms.
5. Stable appearance of a stellate density in the right apex; this most likely represents a parenchymal scar. However, because this nodule measures 8-9 cm a scar carcinoma cannot entirely be excluded and sequential follow up would be warranted in a high risk patient in 6-12 months.

(Compl. Ex. F, docket # 1-1, ID#s 25-26; *see also* Compl. Ex. O, docket # 1-1, ID# 54). On April 3, 2012, Dr. Pandya approved a Norco prescription. (docket # 62-1, ID# 729).

On April 3, 2012, Dr. Holmes examined plaintiff. Plaintiff was status post-lung surgery performed in March 2010. Plaintiff indicated that he was in the process of getting an offsite second opinion regarding the possible scar carcinoma noted on his CT scan. (Compl. Ex. O, docket # 1-1, ID# 51). Plaintiff's chronic medical problems include hypertension and hepatitis C. He was receiving at least seven prescriptions.

In April 2012, the physicians ordered a reduction in plaintiff's daily dose of narcotics. (Compl. ¶ 25). On or about April 2, 2012, Dr. Holmes submitted another non-formulary medication request for Norco. It was approved by Dr. Pandya, but in a smaller dose for 30 days, with instructions to consider some additional pain medication alternatives. (Holmes Aff. ¶ 27, ID# 243).

On April 9, 2012, plaintiff wrote a letter to Warden Smith stating that Corizon Health Care had informed him that he was free of cancer, but he did not believe it. Plaintiff complained that it was "not acceptable" to have his narcotic medication reduced "just because [he was] in remission." He stated that he "need[ed] to know how to go about getting a second opinion from A Doctor in the outside world, <u>NOT</u> Affiliated with the Department of Corrections in any way." Plaintiff ended his letter with a statement that any help the warden could provide would be greatly appreciated. The letter is unsigned. (Compl. Ex. G, docket # 1-1, ID# 28). Plaintiff states that the warden did not respond to his letter. (Compl. ¶ 26). The warden's office has no record of receiving plaintiff's correspondence. (Smith Aff. ¶ 8, docket # 58-5, ID# 698). Further, the process through which a prisoner may seek approval for outside medical services at their own expense is explained in

MDOC's operating procedure O.P. 04.16.135. (docket # 58-6, ID#s 700-02). The process begins with the Health Unit Manager, not the Warden.

Warden Smith is not a medical care provider. His role is "overseeing the overall operation of the facility, including prisoners, staff, and grounds, while ensuring the safety and security of the public." (Smith Aff. ¶ 1, ID# 697). The warden does attend case management meetings to obtain information regarding the medical condition of prisoners, but decisions regarding medical parole or commutation are not made at these meetings. The warden is not responsible for, and does not take an active role in, the process of application for medical parole or commutation. (*Id.* at ¶¶ 4-7, ID#s 697-98).

On May 1, 2012, Dr. Pandya expressed concern that plaintiff had been taking Norco "for many months." He approved a prescription for "Ultram 50 mg TID" to be given with "Tylenol 325 mg 2 tab." (Compl. Ex. P, docket # 1-1, ID# 63; docket # 62-1, ID# 730). On May 4, 2012, Dr. Pandya authorized the non-formulary medication of Vaseline for treatment of plaintiff's dry skin. (Compl. Ex. P, docket # 1-1, ID# 60). On June 7, 2012, Dr. Pandya approved the non-formulary medication of an Atrovent inhaler for plaintiff because plaintiff reported that "this really help[ed with his chronic symptoms." (docket # 62-1, ID# 733).

In May, June, and July 2012, plaintiff advised Dr. Holmes of his desire to have a right lung biopsy in order to determine the exact nature of the small mass in his right lung. Plaintiff was informed that the plan of treatment was continued monitoring with CT scans. (Holmes Aff. ¶¶ 29-33, ID#s 244-45). Dr. Holmes noted that the mass is very small, was not changing, and it was being monitored through CT scans. Plaintiff has a "frail" lung capacity and a lung biopsy could cause him harm and/or complications. Weighing the risk posed by a biopsy against the fact that plaintiff's CT

scans showed nothing of significance or cause for concern, Dr. Holmes determined that continued monitoring with CT scans was the medically appropriate course of action. (Holmes Aff. ¶ 46, ID# 248).

On August 23, 2012, Dr. Pandya approved the following adjustment in plaintiff's medication: "Vicodin 7.5 instead of Ultram for chronic pain in lung CA patient. Vicodin much better to quell coughing spasms than Ultram." In addition, Dr. Pandya approved up to 4 tabs of Norco per day for a period of 90 days. (docket # 62-1, ID# 737).

On September 26, 2012, plaintiff filed this lawsuit.

On October 4, 2012, plaintiff was transported from prison to Carson City Hospital for a CT scan of his chest. The radiologist interpreted the results as follows:

1. Stable appearance of presumed parenchymal scarring in the right lung apex.
2. Changes of the centrilobular emphysema in the remaining right lung.
3. Minimal streak densities and a tiny juxtapleural nodule are of uncertain clinical significan[ce] even in a patient with a known malignancy.
4. Stable appearance of the postoperative left chest.
5. No evidence of hepatic, adrenal or bony metastic disease.

(docket # 62-1, ID# 712).

Plaintiff's cancer is in remission. He is in stable condition and will continue to be monitored.[3] (Holmes Aff. ¶ 45, ID # 238). Plaintiff has received medically appropriate treatment. (Holmes Aff. ¶¶ 47-49, ID# 248; Pandya Aff. ¶¶ 4-8, ID#s 677-78).

---

[3]Plaintiff argues that his cancer is not in remission. (Plf. Brief at 5). He has not supported the argument with evidence. "Arguments in the parties' briefs are not evidence." *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006).

**Discussion**

I.      **Official Capacity Claims**

Plaintiff's claims for damages against defendants Smith, Pandya, and Moore in their official capacities are barred by Eleventh Amendment immunity. The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012). Furthermore, States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71. Defendants Smith, Pandya, and Moore are entitled to dismissal with prejudice of all plaintiff's claims for monetary damages against them in their official capacities.

II.     **Individual Capacity Claims**

Plaintiff alleges that defendants, in their individual capacities, violated his Eighth Amendment rights under the Cruel and Unusual Punishments Clause. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate

indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard. Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298. The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care. Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted). Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims which sound in state tort law. *See Alspaugh v. McConnell*, 643 F.3d 162,169 (6th Cir. 2011); *Westlake*, 537 F.2d 860 n. 5;

*see also Reed v. Speck*, 508 F. App'x 415, 419 (6th Cir. 2012) ("The subjective component is intended 'to prevent the constitutionalization of medical malpractice claims.'") (quoting *Dominguez v. Corr. Med. Servs.*, 555 F.3d at 550).

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim for deliberate indifference to serious medical needs against the three medical professionals: Drs. Holmes and Pandya and Nurse Moore. The record before the court demonstrates that the Michigan Department of Corrections has provided plaintiff with constant medical care for his admittedly serious condition of lung cancer. This care has included surgery, radiation, chemotherapy, diagnostic testing for recurrence, and reasonable medications for pain. The record is devoid of evidence of any deficiency in plaintiff's medical care. Plaintiff's disagreement with the treatment provided falls far short of supporting an Eighth Amendment claim. *See e.g.*, *Kosloski v. Dunlap*, 347 F. App'x 177, 180 (6th Cir. 2009); *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 357 (6th Cir. 2006). Specifically, neither the Supreme Court nor the Sixth Circuit has ever held that a prison doctor's refusal to provide an inmate with a second opinion amounts to deliberate indifference to serious medical needs.

Warden Smith is entitled to entry of judgment in his favor. He cannot be held liable under a *respondeat superior* theory. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) ("Under § 1983, there is no *respondeat superior* or vicarious liability."). Further, he is entitled to rely on the judgment of medical professionals regarding the appropriate course of medical treatment. *See Arnett v. Webster*, 658 F.3d 742, 236 (3d Cir. 2011); *Spruill v. Gillis*, 372 F.3d 210, 236 (3d Cir. 2004); *see also Fantone v. Herbik*, No. 13-1644, 2013 WL 2564429, at * 4 (3d Cir. June 12, 2013) (A prison's warden is not deliberately

indifferent to a prisoner's serious medical needs when he "fail[s] to respond directly to the medical complaints of a prisoner who was already being treated by a prison doctor."); *Phillips v. Tiona*, 508 F. App'x 737, 744 (10th Cir. 2013) (same).

## Recommended Disposition

For the foregoing reasons, I recommend that plaintiff's claims for damages against defendants Smith, Pandya, and Moore in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity. I further recommend that defendants' motions for summary judgment (docket #s 53, 57) be granted and that judgment be entered in their favor on all plaintiff's claims against them in their individual capacities.


Dated:   September 10, 2013                /s/  Joseph G. Scoville
                                           United States Magistrate Judge

### NOTICE TO PARTIES
Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).